[Civ. No. 1444. Fourth Appellate District.—November 9, 1933.]

EMPIRE REALTY AND MORTGAGE COMPANY, LTD. (a Corporation), Respondent, v. HENRY MEHL, Appellant.

Pollock & Mitchell for Appellant.

Sanford & Sanford and Fred A. Wilson for Respondent.

BARNARD, P. J.—On July 25, 1931, the defendant, in writing, appointed the plaintiff as his exclusive agent to dispose of certain described real property by sale or exchange. The listing instrument contained an agreement to pay a certain commission if the property was disposed of ''directly or indirectly'' through the agency of the plaintiff or if the same was disposed of by the defendant to parties procured by the plaintiff, and further provided .that it was to continue in force until canceled. On or about May 10, 1932, the defendant exchanged the property thus listed for another piece of property owned by a Mr. and Mrs. Magill. On May 13, 1932, the plaintiff brought this action to recover the amount agreed to be paid as a commission. The court found practically all of the allegations of the complaint to be true and particularly found that the defendant was brought into contact with the Magills through the efforts of the plaintiff pursuant to the provisions of the contract of employment referred to; that pursuant to the contract and the efforts of the plaintiff an agreement of exchange was executed between the defendant and the Magills on February 19, 1932; that the same was not then consummated; and that thereafter, on or about May 11, 1932, while the contract of employment was still in force, the defendant consummated an exchange of the same properties with the Magills. From a judgment for $1250 in favor of the plaintiff the defendant has appealed.

Upon the main issue the only point raised by the appellant is that the evidence is not sufficient to sustain the court's findings to the effect that the buyer was procured by the respondent and that the property was disposed of either directly or indirectly through the agency of the respondent.

The following facts appear from the evidence: The respondent acted in this matter through one of its salesmen, J. L. Messenger. For four or five months prior to February, 1932, Messenger had been working with another

agent named Moses in an effort to bring about a sale or exchange of the appellant's property and to this end they had together shown several properties during this period. About February 19, 1932, Moses told Messenger that he had talked to the appellant about certain property owned by Mr. and Mrs. Magill and that he seemed interested and asked him if he could get the appellant to go out and look at the Magill property. Messenger took the appellant to the Magill property and went over it with him. As a result of this visit the parties agreed to an exchange of properties and Messenger prepared a contract providing for such an exchange, which agreement was dated February 19, 1932. This contract contained a provision that it should not go into effect unless the appellant was able to make certain arrangements with his banker. It also contained a provision for the payment of a commission by the appellant to the respondent. Messenger took this contract to the appellant and obtained his signature and then turned it over to Moses, who took it to another agent with whom the Magill property was listed, and that agent obtained the signature of the Magills. The same day, or the next day, the appellant reported to Messenger that he was unable to make the desired arrangement with his banker and could not proceed with the agreement. In the meantime, Messenger and Moses had agreed between themselves how the commission should be divided.

Moses testified that he knew during this time that the respondent had an exclusive listing on the appellant's property; that he knew the appellant was a client of the respondent's office; that he himself occupied the position of a "go-between" between the other two agents; that he negotiated with Messenger for a division of his commission because Messenger had an exclusive listing; that he himself had no listing on either one of the properties involved in the deal; that for this reason he communicated with Messenger in the hope that he could bring about the exchange, if possible; and that Messenger had complete charge of the negotiations with the appellant and the drawing of the agreement.

No effort was made to cancel respondent's listing agreement and Messenger continued to endeavor to find a sale or exchange for the appellant's property. He submitted to the appellant a number of propositions for an exchange

during March, April and the early part of May, 1932, and in each instance the appellant made a trip to examine the property submitted. As late as May 6, 1932, Messenger took the appellant to Whittier on such an errand. During all of this time the appellant said nothing to the respondent about being further interested in the Magill property or about having listed his own property with Moses. On or about May 10, 1932, the appellant and the Magills consummated an exchange of the properties covered by their previous written agreement of February 19, 1932. It appears that some time during April, 1932, the appellant had listed his property with Moses, who conducted the final negotiations with the Magills.

While the appellant relies upon certain other evidence as being more favorable to him, we are not here concerned with any such conflicts. The appellant agreed in writing to pay a commission to the respondent if his property was disposed of either directly or indirectly through the agency of the respondent, or if the property were disposed of by the appellant himself to parties procured by the respondent. Not only may the inference be reasonably drawn from the evidence that this buyer was procured by the respondent who had enlisted the aid of Moses in finding a purchaser, but it appears that the property was disposed of indirectly, if not directly, through the agency of the respondent. The findings and judgment are fully supported by the evidence.

The appellant also complains of the amount of the judgment. While he testified that during the negotiations leading up to the agreement of February 19, 1932, he told Messenger that he would pay him $1,000 if the deal went through, the contract itself provides for a fixed percentage on the selling price. Subsequently the respondent did considerable other work in trying to dispose of the property and there is neither sufficient evidence of any modification of the contract nor a lack of evidence to sustain the court's finding as to the amount due.

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.